1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10

11   CATAPHORA INC.,                )
                                    )
12            Plaintiff(s),         )      No. C09-5749 BZ
                                    )
13       v.                         )
                                    )   **ORDER DENYING PLAINTIFF'S**
14   JERROLD SETH PARKER, et al.,)      **MOTION FOR SUMMARY JUDGMENT**
                                    )
15            Defendant(s).         )
     _____ )
16

17       Plaintiff has moved for summary judgment that each

18   defendant is jointly and severally liable to plaintiff for

19   payment of the $366,000.00 non-refundable fee due under the

20   services contract which the parties executed.[1]  Based on the

21   record before me, I find that plaintiff is not entitled to the

22   judgment it seeks because the non-refundable fee is an illegal

23   penalty under governing California law.  In reaching that

24   decision I find that the following material facts are either

25

26

27       [1]   All parties have consented to my jurisdiction for all
     proceedings including entry of final judgment, pursuant to 28
28   U.S.C. § 636(c).

                                    1

1  undisputed or not genuinely in dispute.[2]  See Rule 56(f)(3).

2  In late September or early October 2009, plaintiff and

3  Jerrold Parker on behalf of defendants, entered into a written

4  services contract.  I find that Mr. Parker had actual and

5  ostensible authority to enter into the agreement.  The

6  contract is integrated and the provisions relevant to this

7  dispute are not ambiguous and can be interpreted without

8  resorting to parol evidence.  Essentially, the parties, after

9  negotiations, agreed that defendants would retain Cataphora to

10  work on the drywall litigation, that in recognition of the

11  significance of the litigation, Cataphora agreed to reduce its

12  usual fees by deferring a substantial portion in return for

13  the defendants paying an initial $366,000.00 fee.  Plaintiff

14  and defendants agreed that either party could terminate the

15  contract within 30 days, but once the contract was executed,

16  the initial fee would be invoiced immediately, due within 30

17  days, and non-refundable.  The initial fee was to cover

18  certain specified services that were to be performed over a 24

19  month period of time, during which time other specified

20  services would be billed at incremental amounts.  Cataphora

21  sent to defendants an invoice dated September 30, 2009 for

22  $366,000.00.  On October 6, 2009, defendants instructed

23  Cataphora to stop work on the drywall litigation and shortly

24  thereafter advised plaintiff that they would not pay the

25  invoice.  Defendants never provided any data from the drywall

26

27      [2]    The Court adopts the facts in the parties' joint
       statement of undisputed facts (Docket No. 40) except for
28   paragraph six.

2

1   litigation for plaintiff to analyze. This suit ensued.

2       Defendants argue that no fee is due because they timely
3   terminated the contract under paragraph 2.2. Based on this
4   record, it is not clear when the defendants terminated the
5   contract pursuant to paragraph 2.2 and 10.1 since neither
6   party produced any writing which is a clear notice of
7   termination. In any event, in paragraph 2.3(a) the contract
8   provides that once proper notice of termination is given, the
9   $366,000.00 fee becomes payable. So for purposes of this
10  decision, I need not decide whether the contract was properly
11  terminated.

12      I also find that the contract was not an illegal fee
13  sharing agreement. I can find no provision that I would
14  consider a success fee within the meaning of the cases cited
15  by the defendants since any payment of the deferred fees
16  appears to have rested entirely within defendants'
17  discretion.[3] Because there is no improper success fee in the
18  contract, the agreement is not the result of fraudulent
19  inducement or unilateral mistake.

20      I do however find the $366,000.00 fee to be an illegal
21  penalty under California law. As the California Supreme Court
22  ruled in Freedman v. The Rector, 37 Cal.2d 16 (1951) "'any
23  provision by which money or property would be forfeited
24  without regard to the actual damage suffered would be an
25  unenforceable penalty.'" Id. at 21-22, quoting Ebbert v.

26  _____

27      [3]   Although the term "success fee calculation" is used
    once in the contract, it is not defined and later sections of
28  the contract clarify that any deferred fees are discretionary
    and not related to the outcome of the case.

3

1  Mercantile Trust Co., 213 Cal. 496, 499 (1931). See also
2  Kuish v. Smith, 181 Cal.App. 4th 1419, 1427 (2010); Cal. Civ.
3  Code Section 3369 ("Neither specific nor preventive relief can
4  be granted to enforce a penalty or forfeiture in any case, nor
5  to enforce a penal law, except in a case of nuisance or as
6  otherwise provided by law.") The $366,000.00 fee is an
7  unenforceable penalty because it bears no relation to the work
8  performed or to the damage the defendants may have caused.
9  While plaintiff asserts that it sustained damage, such as the
10  loss of other business, that damage will have to be proved at
11  trial.

12      In its supplemental brief, plaintiff contends that the
13  above cases only apply to actions where equitable relief is
14  sought, which plaintiff argues is not the case here. Given
15  the merger of law and equity courts, this seems to be a
16  distinction without a difference in this case. Although
17  Cataphora labels its action as one to recover a non-refundable
18  fixed fee as damages for breach of contract, it could just as
19  readily have sought specific performance of the promise
20  requiring defendants to pay the non-refundable fixed fee as
21  soon as it was invoiced. In any event, plaintiff's
22  construction of Freedman is too narrow. The statutes,
23  principles, and policy discussed in Freedman "enormously
24  expand the situations and conditions where relief from
25  forfeiture may be given" and apply to other kinds of contracts
26  and scenarios besides vendor-purchaser forfeiture cases. 13
27  Witkin, Summary of Cal. Law (10th Ed. 2005) Equity, § 64 at
28  358-60. See e.g. Hill v. Hearron, 113 Cal.App.2d 763, 766-68

4

1  (1952) (applying <u>Freedman</u> to hold that a provision in a
2  partnership agreement for forfeiture in event of breach
3  constituted an unenforceable penalty); <u>Bach v. Curry</u>, 258
4  Cal.App.2d 676, 680-81 (1968) (in holding that a provision of
5  an insurance agent's employment contract was not an
6  unenforceable penalty, the Court assumed *arguendo* that the
7  <u>Freedman</u> doctrine applied to such contracts).[4]

8        Plaintiff further argues that I should apply the rule
9  from <u>Parker v. Twentieth Century-Fox Film Corp.</u>, 3 Cal.3d 176
10  (1970), and <u>Payne v. Pathe Studios, Inc.</u>, 6 Cal.App.2d 136
11  (1935), to this matter.  This argument is also not persuasive.
12  Both <u>Parker</u> and <u>Payne</u> interpreted contracts for employment
13  where movie studios specifically agreed to pay actresses a
14  guaranteed sum for the exclusive right to employ them in a
15  film.  <u>Id.</u>  This type of "pay or play clause"[5] in an
16  employment contract — where the employer guarantees payment
17  in consideration for an employee agreeing to be available to
18  work during a specific time period or perform in a certain
19

20        [4]    If I accept plaintiff's position that <u>Freedman</u> may
21  only be used to grant equitable relief, then an absurd result
    follows.  Defendants would be forced to pay plaintiff the
22  initial fee.  Then, defendants could file a lawsuit in attempt
    to recover their initial fee as a forfeiture under <u>Freedman</u>.
23  With there no longer being a distinction between courts of
    equity and courts of law, I see no reason to require the
24  parties to go through these extra steps.  Accordingly, because
    plaintiff has not presented any persuasive authority of why
25  <u>Freedman</u> should be limited to only equitable relief cases, I
    apply it here.

26        [5]    See <u>Directors Guild of America, Inc. v. Millennium
    Television Network, Inc.</u>, 2001 WL 1744609 at *4 (C.D. Cal.
27  2001) ("the 'pay or play' principle reflects a bilateral
    promise between the employee and the employer that is integral
28  to the entertainment industry").

                                5

1 | film — is not analogous to plaintiff's services agreement
2 | with defendants in this matter. Plaintiff did not contract
3 | with defendants to be an exclusive service provider that would
4 | get paid just to be available. Rather, plaintiff agreed to
5 | provide services in consideration for an initial fee. Before
6 | plaintiff could provide such services, defendants repudiated
7 | the contract. Defendants may be liable for the actual damages
8 | caused by this repudiation. Enforcing the payment of the
9 | initial fee, however, would result in an illegal penalty under
10 | Freedman.

11 | Plaintiff's reliance on Parker and Payne is misplaced for
12 | other reasons as well. For one thing, the Parker Court did
13 | not address whether Parker's contract resulted in an
14 | unenforceable penalty. 3 Cal.3d at 180-81. Instead, the only
15 | issue in Parker was whether plaintiff's mitigation efforts
16 | were adequate. Id. at 182. The issue of mitigation has no
17 | relevance to this case. In Payne, the Court reached its
18 | decision that the minimum payment was not a penalty based on
19 | the holding in San Joaquin Light & Power Corp. v. Costaloupes,
20 | 96 Cal.App. 322, 329 (1929). Payne, 6 Cal.App.2d at 141. San
21 | Joaquin, however, relied on dicta from another case to reach
22 | its result. San Joaquin, 96 Cal.App. at 329 (citing A.B.
23 | Field & Co., Inc. v. Haven, 36 Cal.App. 669, 672 (1918)).
24 | Furthermore, the decision in San Joaquin has been criticized
25 | as "unsound and inconsistent with the modern rule." 1 Witkin,
26 | Summary of Cal. Law (10th Ed. 2005) Contracts, § 846 at 932-
27 | 33. Notably, Payne was decided by the Court of Appeal sixteen
28 | years before the Supreme Court decided Freedman. Freedman is

6

1  therefore the law I apply to this case.

2      For the foregoing reasons, **IT IS ORDERED** that plaintiff's

3  motion for summary judgment in the amount of $366,000.00 is

4  **DENIED**.

5  Dated: November 17, 2010

6  _____
                Bernard Zimmerman
7              United States Magistrate Judge

8
   G:\BZALL\-BZCASES\CATAPHORA V. PARKER\ORDER ON SUMMARY JUDGMENT (AFTER
9  HEARING).wpd

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

7