UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CATAPHORA INC., | ) | |
| Plaintiff(s), | ) | No. C09-5749 BZ |
| v. | ) | |
| JERROLD SETH PARKER, et al., | ) | **ORDER DENYING DEFENDANTS' RULE 50(b) MOTIONS AND MOTION FOR NEW TRIAL** |
| Defendant(s). | ) | |

Defendants move pursuant to Rule 50(b) of the Federal Rules of Civil Procedure for judgment as a matter of law on the grounds that Plaintiff failed to prove with "reasonable certainty" whether it is entitled to damages for lost profits under its breach of contract claim, and that Defendants are not liable for breach of contract in the first instance under the doctrines of mistake and fraud.[1]  Alternatively, Defendants seek a new trial.  For the reasons set forth below, Defendants motions are **DENIED**.

///

---

[1] All parties have consented to magistrate judge jurisdiction for all proceedings including entry of final judgment, pursuant to 28 U.S.C. § 636(c).

1

On December 8, 2009, Plaintiff sued Defendants for, *inter alia*, breach of contract.  In August 2010, Plaintiff moved for summary judgment arguing that Defendants were liable for the $366,000 non-refundable fee regardless of the amount of damages Plaintiff actually suffered.  I denied Plaintiff's motion, finding that the non-refundable fee was an illegal penalty under California law, requiring Plaintiff to prove its damages at trial.  (Docket No. 83.)  Defendants then moved for summary judgment on the grounds that they properly terminated the contract and could not be liable for breach of contract, and on the grounds that Plaintiff was not entitled to damages or did not suffer any damages.  (Docket No. 132.)  I denied Defendants' motion (Docket No. 156), and the case proceeded to trial in September 2011.  After a 6-day trial, the jury found that Defendants breached their contract with Plaintiff and that Plaintiff suffered $317,113.00 in lost profits.  Defendants now challenge that verdict via two Rule 50(b) motions and a motion for a new trial.

Defendants seek judgment as a matter of law on the issues decided against them on the basis that the jury lacked a legally sufficient evidentiary basis for their decision.[2]  Defendants' motions in effect seek to relitigate the probative value of virtually all of the evidence that was introduced at

---

[2] A party must make a motion for judgment as a matter of law under Rule 50(a) before a case is submitted to the jury.  Defendants did so here, and I deferred ruling on the motion.  Defendants then renewed their motion under Rule 50(b).  In ruling on the renewed motion, the court may either "allow judgment on the verdict, if the jury returned a verdict," or "order a new trial," or "direct the entry of judgment as a matter of law."  Fed. R. Civ. P. 50(b).

2

trial. During the jury trial, each party submitted substantial evidence, bolstered by expert testimony, in support of its position. The jury found Plaintiff's showing to be the more compelling and I decline to overturn the jury's findings.

### A. Legal Standards for Rule 50(b) Motions

A jury verdict can be overturned and a post-trial motion for judgment as a matter of law granted "only if, under the governing law, there can be but one reasonable conclusion as to the verdict. In other words, the motion should be granted only if 'there is no legally sufficient basis for a reasonable jury to find for that party on that issue.'" Winarto v. Toshiba Am. Elecs. Components, Inc., 274 F.3d 1276, 1283 (9th Cir. 2001). In ruling on a motion for judgment as a matter of law, the district court "is not to make credibility determinations or weigh the evidence." Id. The district court "must accept the jury's credibility findings consistent with the verdict."[3] Id.

In reviewing the motion, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable evidentiary inferences in favor of the non-moving party. Reeves v. Sanderson Plumbing Products,

---

[3] The district court must disregard evidence favorable to the moving party that the jury is not required to believe. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150-51 (2000); Pavao v. Pagay, 307 F.3d 915, 918 (9th Cir. 2002); Winarto, 274 F.3d at 1283, 1286-87 (district court must "accept the jury's credibility findings consistent with the verdict" and "disregard all evidence favorable to the moving party that the jury is not required to believe" because "[w]hen two sets of inferences find support in the record, the inferences that support the jury's verdict of course win the day.").

Inc., 530 U.S. 133, 150 (2000); Josephs v. Pac. Bell, 443 F.3d 1050, 1062 (9th Cir. 2006). The court must uphold a jury's verdict even if the record contains evidence that might support a conclusion contrary to the jury's verdict. Pavao v. Pagay, 307 F.3d 915, 918 (9th Cir. 2002).

**B.   Rule 50 Motion Pertaining to Lost Profits**

The jury found that Plaintiff was entitled to recover $317,113.00 in lost profits on Plaintiff's breach of contract claim. This award was supported by Plaintiff's expert's damages analysis of projected profits.[4] Defendants argue that because the contract at issue was for a new venture in an area where Plaintiff had no track record, lost profits damages are too speculative and cannot be awarded.

> It has been frequently stated that if a business is new, it is improper to award damage for loss of profits because absence of income and expense experience renders anticipated profits too speculative to meet the legal standard of reasonable certainty necessary to support an award of such damage. However, the rule is not a hard and fast one and loss of prospective profits may nevertheless be recovered if the evidence shows with reasonable certainty both their occurrence and the extent thereof.

Gerwin v. Southeastern Cal. Ass'n. of Seventh Day Adventists, 14 Cal. App. 3d 209, 221 (1971) *cited with approval in* Sanchez-Corea v. Bank of America, 38 Cal. 3d 892 (1985); see also Natural Soda Products Co. v. Los Angeles, 23 Cal. 2d 193 (1943). The limitation on awarding anticipated profits of a new business may be overcome when there is concrete evidence allowing a jury to establish the amount of damages with

---

[4] None of the evidence that Plaintiff submitted at trial regarding its lost profit analysis was presented either in support of Plaintiff's motion for summary judgment or in opposition to Defendants' motion for summary judgment.

4

reasonable certainty.  Here, all parties agree that the crux of the dispute is whether Plaintiff established the extent and the occurrence of the lost profits to a reasonable certainty. See Grupe v. Glick, 26 Cal.2d 680, 693 (1945); Parlour Enterprises, Inc. v. Kirin Group, Inc., 152 Cal. App. 4th 281, 287-88 (2007); Electronic Funds Solutions, LLC v. Murphy, 134 Cal. App. 4th 1161, 1180 (2005); Resort Video, Ltd. v. Laser Video, Inc., 35 Cal. App. 4th 1679, 1697-98 (1995).  To establish that lost profits are reasonably certain, a plaintiff may rely on expert testimony, the experience of similar businesses, whether the market is established, market studies, and plaintiff's experience in the field, among other factors.  Parlour Enterprises, 152 Cal. App. 4th at 288 (citing Kids' Universe v. In2Labs, 95 Cal. App. 4th 870, 884-85 (2002) and S. Jon Kreedman & Co. v. Meyers Bros. Parking-Western Corp., 58 Cal. App. 3d 173, 184-85 (1976)).

In this case, Plaintiff provided sufficient evidence to establish lost profits with reasonable certainty.  Defendants' initial argument – that the project contemplated by the parties was a new venture for Plaintiff – is both unpersuasive and a mischaracterization of the evidence that was before the jury.  Unsurprisingly, Defendants have pointed to portions of the testimony that are helpful to them to argue that the contract between the parties was dissimilar to any contract that Plaintiff had performed in the past.  The record is replete, however, with testimony establishing that 1) Plaintiff was in the business of providing automated document review services (Chapman at 80:7-13, 86:12-16, 133, 164;

Nystrom at 183:7-10, 184:18-22); 2) that Plaintiff had handled large eDiscovery projects for both plaintiff-side and defense-side firms in the past, and that those contracts had involved projects of a similar size as this contract (Chapman at 94; Nystrom at 323:3-7); and 3) that while Plaintiff anticipated that the payment structure would need to be different for its contract with Defendants, the nature of the work that Plaintiff was going to perform would be the same as projects that Plaintiff had performed in the past. (Chapman at 80:6-18, 82:3-22, 84:20-85:19.)  Thus, there was more than adequate testimony that the services for which Defendants contracted were services that Plaintiff was very familiar with providing, and that the venture was anything but "new."  The jury was in the best position to weigh the evidence presented, and given the testimony it received, the court must accept the jury's findings.

At the hearing, Defendants stressed that the lost profits calculation in this case is speculative because the origin of Plaintiff's analysis (*i.e.*, the $366,000 figure) is not tied to any specific testimony concerning its derivation.  In other words, Defendants assert that the $366,000 cannot serve as the starting point for Plaintiff's lost profit analysis because there is no testimony establishing that this amount was anticipated to be a revenue figure for the contract in this case, as opposed to just a cash influx that Plaintiff needed to keep its business operational.  Yet the testimony in the record establishes that the parties negotiated this amount as the agreed upon price for Plaintiff to perform a defined

6

amount of work under the contract. $366,000 was to be an upfront payment for Plaintiff, essentially, to process 5 million images over a 24-month period.  This is not a case where any question existed whether Plaintiff could generate any business or what Plaintiff would earn from the initial phase of the contract.  What Plaintiff was required to supply to prove lost profits was evidence of its projected cost to perform the work and its projected profit.  Plaintiff's projection of lost profit was based on testimony of Plaintiff's employees and its expert witness, Patrick Kennedy, and grounded on assumptions that were both realistic and reasonable given Plaintiff's prior history in the eDiscovery business.  Mr. Kennedy testified as to the revenues and lost profit that Plaintiff would have earned had it received the benefit of the bargain under the contract.  For example, Mr. Kennedy testified as to certain costs borne by Plaintiff as a result of its contract with Defendants, such as the cost of labor (*i.e.*, wages for Plaintiff's employees who were to assist in executing the services under the contract, which were based off of Plaintiff's payroll records); the cost of utilities (*i.e.*, office supplies and utilities, costs supported by Plaintiff's financial statements); and equipment costs (*i.e.*, the cost of servers Plaintiff purchased to execute the contract, as evidenced by invoices).  (See Kennedy at 571:13-580:9.)[5]

---

[5] Mark Epstein, Plaintiff's Chief Information Officer, provided similar testimony.  (See, e.g., Epstein 481:1-482:16.)  Plaintiff's damages calculations are also supported by testimony that Plaintiff's typical profit margin was approximately 70%. (See, e.g., Nystrom 322:18.)

7

Plaintiff also presented evidence sufficient to establish that the money it expended to begin to perform anticipated work services under the contract was a foreseeable consequence of Defendants' breach of contract.  There was testimony that Plaintiff determined that it needed to take proactive measures, even prior to receiving any data from Defendants, to ensure that it could meet the very fast-paced trial deadlines that had been established in the Chinese Drywall litigation, which included allowing Defendants to utilize Plaintiff's services to prepare for imminent depositions.  (See, e.g., Chapman at 89:2-20, 94:20-95:10, 102:17-21.)

Indeed, in many of the cases cited by Defendants (and under California law generally), the damages evidence found to be too speculative was far more uncertain than Plaintiff's evidence, which was not only based on the bargained-for contract price, but also on a long history of successfully providing the exact same services to other customers that it planned to provide to Defendants.  See, e.g., Kids' Universe, 95 Cal.App.4th at 887-888 (finding expert testimony insufficient to demonstrate lost profits where a small toy store claimed that flood damage to the store caused by defendant led to $50 million in lost profits because Plaintiff's new website would have allowed it to compete in the Internet toy marketing business); Vestar Dev. II, LLC v. Gen. Dynamics Corp., 249 F.3d 958, 962 (9th Cir. 2001) (finding lost profits claim too speculative for breach of agreement to negotiate where plaintiff sought "future profits that it hoped to earn from the shopping center it had planned

8

to build on the parcel it was attempting to buy"); Eisenmayer v. Leonardt, 148 Cal. 596, 601 (1906) (affirming exclusion of testimony as to value of unissued stock for company never formed because there were "no facts stated—either real or hypothetical—as a basis for an intelligent opinion"); Greenwich S.F., LLC v. Wong, 190 Cal. App. 4th 739, 766 (2010) (finding lost profits claim too speculative where the plaintiff assumed, rather than proved, the reasonable certainty of future predicate events upon which the damages depended); Fisher v. Hampton, 44 Cal. App. 3d 741, 749 (1975) (finding lost profits evidence too speculative where "there was no testimony that any oil could be recovered at a profit from the drilling of one well, and there was no testimony as to the extent of possible profits from the one initial well."). Unlike these cases, the evidence presented in this case permits a reasonable conclusion consistent with the jury's verdict. Josephs, 443 F.3d at 1062. Because the evidence is adequate to support the jury's conclusion, the verdict must be upheld. Johnson v. Paradise Valley Unified Sch. Dist., 251 F.3d 1222, 1227 (9th Cir. 2001). Accordingly, Defendants' motion is **DENIED**.

**C.   Rule 50 Motion as to Liability**

Defendants also assert that no reasonable jury could have found that Defendants breached the contract because there was evidence that no contract was ever formed. In particular, Defendants argue that the parties never had a mutual understanding as to material terms of the contract including the inclusion of 1) a success fee provision or 2) a

9

nonrefundable fee provision.

To begin, and as Plaintiff points out in its opposition papers, the issue of whether there was a binding contract between the parties was resolved by the court in its order denying Plaintiff's motion for summary judgment (Docket No. 83), and was thus never submitted to the jury.  In fact, in the preliminary instructions, the jury was advised that the court had ruled that the parties had entered into a written contract and it was therefore only necessary for the jury to determine whether the contract had been breached and, if so, in what amount.  Additionally, when Defendants first raised unilateral mistake of fact and fraudulent inducement as affirmative defenses in their initial pretrial submissions in February 2011, I denied their request to instruct on mistake and fraud in part because Defendants had not pled those defenses in its answer.  (Docket No. 124.)  Thereafter, Defendants did not attempt to amend their answer until after the close of evidence, at which time I denied their request. See Fed. R. Civ. Proc. 15.  Thus, the issue of whether there was a valid and binding contract was never put before the jury, rendering it difficult to find that their verdict, which was premised on the existence of a valid and binding contract, was not supported by substantial evidence.[6]

---

[6] To the extent Defendants contend that the jury verdict is erroneous because the jury found Plaintiff's testimony more credible, that contention is not well-founded and is no reason to upset the verdict.  The controversy in this case arose out of different interpretations of language that was in the contract; namely, whether the terms "success fee calculation" and "nonrefundable" were intentionally (or fraudulently) included in the contract.  Since the outcome depended heavily upon the credibility of each party's

Because substantial evidence in the record supports the jury's verdict on both liability and damages, Defendants' Rule 50(b) motions are **DENIED**.

**Defendants' Motion for a New Trial**

Defendants also move for a new trial. A court may grant a new trial after a jury trial "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed. R. Civ. P. 59(a)(1)(A). "Historically recognized grounds include, but are not limited to, claims 'that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving.'" Molski v. M.J. Cable, Inc., 481 F.3d 724, 729 (9th Cir. 2007) (quoting Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 251 (1940)). The Ninth Circuit has held that "[t]he trial court may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." Id. In considering a motion for new trial, the court must adhere to the harmless error rule of Fed. R. Civ. P. 61, which "provides that no error in any ruling or order by the court is ground for a new trial or otherwise disturbing a judgment unless refusal to do so is inconsistent with

---

witnesses, Defendants' arguments essentially amount to a witness credibility issue. Witness credibility is fundamentally a jury function. See Reeves, 530 U.S. at 150. The jury may appropriately evaluate inconsistent testimony. Plaintiff presented substantial testimony of how and why the terms "success fee calculation" and "nonrefundable" were included in the contract (including the timeline of the revisions made by both sides), which the jury considered in rendering a verdict in Plaintiff's favor.

11

1 | substantial justice." <u>Bunch v. United States</u>, 680 F.2d 1271,
2 | 1283 (9th Cir. 1982).

3 |     In its motion for a new trial, Defendants repeat many of
4 | the arguments that they made in their renewed motions for
5 | judgment as a matter of law.  Those arguments are rejected for
6 | the same reasons as explained above.  The jury's verdict was
7 | not against the weight of the evidence.  There was ample
8 | evidence for the jury to conclude that Defendants were liable
9 | for breaching their contract with Plaintiff and to determine
10 | Plaintiff's lost profits with reasonable certainty.  I
11 | determined that the parties had entered into a valid and
12 | binding contract, that the contract did not include an illegal
13 | success fee, and Plaintiff presented a plausible
14 | interpretation of the agreement in light of the context and
15 | circumstances.  The jury was given standard California jury
16 | instructions on contract interpretation.  The instructions
17 | requested by Defendants regarding mistake and fraud were
18 | denied because the Court had ruled there was a contract and
19 | because Defendants failed to plead those defenses in its
20 | answer (or raise them in opposition to Plaintiff's summary
21 | judgment motion) and failed to timely seek leave to amend
22 | their answer even though they had ample time to do so before
23 | trial.  Finding no reason to believe that the verdict
24 | constitutes a "miscarriage of justice" or that it "shocks the
25 | ///
26 | ///
27 | ///
28 | ///

1 conscience", the court will not grant a new trial in this
2 case.  Defendants' motion is **DENIED**.
3 Dated: December 27, 2011

_____
Bernard Zimmerman
United States Magistrate Judge

G:\BZALL\-BZCASES\CATAPHORA V. PARKER\POST TRIAL MOTIONS\ORDER ON DS RULE 50 MOTIONS AND MOTION FOR NEW TRIAL.BZ VERSION.FINAL RULING.wpd