UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CATAPHORA INC.,)
)
      Plaintiff(s),)    No. C09-5749 BZ
)
  v.)    **ORDER AWARDING ATTORNEY'S**
)    **FEES AND INTEREST**
JERROLD SETH PARKER, et al.,)
)
      Defendant(s).)

Plaintiff has moved for attorney's fees and costs, as the "prevailing party" under California Civil Code section 1717, and for prejudgment and postjudgment interest.[1]

**ATTORNEY'S FEES**

"In an action involving state law claims, [federal courts] apply the law of the forum state to determine whether a party is entitled to attorneys' fees, unless it conflicts with a valid federal statute or procedural rule." MRO Commc'ns v. Am. Tel. & Tel. Co., 197 F.3d 1276, 1282 (9th Cir.

---

[1] A ruling on Plaintiff's motion for costs is deferred until after the Clerk has taxed costs and objections, if any, are filed.

1

1999).  Here, the parties signed a contract which provides, in relevant part, that the "prevailing party ... shall be entitled ... to reimbursement for its costs and expense [sic] (including court costs and reasonable fees for attorneys and expert witnesses) incurred with respect to the bringing and maintaining" of any legal action brought by one party against the other and arising out of the contract.  (See Declaration of William W. Farrer at ¶ 7.)  Under California law, "where the parties have contractually obligated themselves to pay attorneys' fees," California Civil Code section 1717 governs.  Farmers Ins. Exchange v. Law Offices of Conrado Joe Sayas, Jr., 250 F.3d 1234, 1237 (9th Cir. 2001).  Section 1717 provides in relevant part:

> (a) In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract ... then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs ...
>
> (b)(1) The court, upon notice and motion by a party, shall determine who is the party prevailing on the contract for purposes of this section, whether or not the suit proceeds to final judgment. Except as provided in paragraph (2), the party prevailing on the contract shall be the party who recovered a greater relief in the action on the contract.

The California Supreme Court has explained that in deciding whether there is a "party prevailing on the contract," the trial court is "to compare the relief awarded on the contract claim or claims with the parties' demands on those same claims and their litigation objectives as disclosed by the pleadings, trial briefs, opening statements, and similar sources."  Hsu v. Abbara, 9 Cal. 4th 863, 876 (1995).

2

"The prevailing party determination is to be made only upon final resolution of the contract claims and only by a 'comparison of the extent to which each party has succeeded and failed to succeed in its contentions.'" Id. (citation omitted).

Here, Defendants argue that Plaintiff is not the "prevailing party" because Plaintiff did not recover the full amount it sought under the contract.  Defendants' argument is unpersuasive.  Unlike other cases where courts have refused to award attorney's fees under section 1717, this case was decided on the merits of Plaintiff's contract claims, and produced a "final resolution" of these claims in Plaintiff's favor.  Hsu, 9 Cal. 4th at 876; Cf. Laurel Village Bakery, LLC v. Global Payments Direct, Inc., Case No. 06-1332, 2007 U.S. Dist. LEXIS 95238, at *10 (N.D. Cal. Dec. 14, 2007) (no fees awarded where case dismissed for improper venue because "[d]efendants do not constitute a 'prevailing party' entitled to fees because no decision has been reached on the merits of Plaintiff's contract claims."); N.R. v. San Ramon Valley Unified Sch. Dist., Case No. 05-0441, 2006 U.S. Dist. LEXIS 47287, 2006 WL 1867682, at *7 (N.D. Cal. Jul. 6, 2006) (concluding that defendant was not a prevailing party because the court "dismissed plaintiffs' breach of contract claim for lack of jurisdiction, and made no determination whatsoever as to the merits of that claim"); Idea Place Corp. v. Fried, 390 F. Supp. 2d 903 (N.D. Cal. 2005) (no award of attorneys' fees where court dismissed breach of contract action for lack of subject matter jurisdiction); Advance Fin. Res., Inc. v.

3

Cottage Health Sys., Inc., Case No. 08-1084, 2009 U.S. Dist. LEXIS 79647, 2009 WL 2871139, at *2 (D. Or. Sep. 1, 2009) (holding that defendant was not a prevailing party under section 1717 because the "contract claim was dismissed on jurisdictional grounds and there [had] been no final resolution of the underlying contract claim"); Estate of Drummond, 149 Cal. App. 4th 46, 51 (2007) (denying attorney's fees because "appellants obtained only an interim victory, based on [the attorney] having attempted to pursue his claims in the wrong forum"); Garzon v. Varese, Case No. 09-9010, 2011 U.S. Dist. LEXIS 4250, 2011 WL 103948, at *3 (C.D. Cal. Jan. 11, 2011) (stating that because "Defendant secured a dismissal on technical grounds, rather than a judgment on the merits of the contract claim, he is not the prevailing party withing the meaning of section 1717 and is, therefore, not entitled to attorney's fees").[2]

Defendants also assert that Plaintiff is not the "prevailing party" because Plaintiff had advanced several of damages theories, including a "lost business opportunity" theory, under which Plaintiff sought nearly two million dollars in damages, which it never collected. This argument is also unpersuasive. Plaintiff's sued to recover $366,000 on

---

[2] Defendants' reliance on Horning v. Shilberg, 130 Cal. App. 4th 197 (2005), is misplaced. In Horning, the trial court found that while defendant had breached the contract, plaintiff had suffered no legally recoverable damages. The trial court then found that defendant was the prevailing party and awarded him attorney fees. After affirming the trial court's rulings on the merits, the Court of Appeal simply held the trial court had not abused its discretion in awarding fees. Here, the jury not only found Defendants liable for breaching the contract, but also awarded Plaintiff damages according to proof.

4

the grounds that Defendants had breached the contract.  While Plaintiff only recovered $317,000, the fact that Plaintiff recovered less than the total it sued for does not automatically make it a nonprevailing party.  See, e.g., In re Sparkman, 703 F.2d 1097, 1100 (9th Cir. Cal. 1983) (rejecting the position that a party who recovers less than the total relief requested is not a "prevailing party"); see also Sukut-Coulson, Inc. v. Allied Canon Co., 85 Cal. App. 3d 648, 656 (1978).  While Plaintiff may have asserted alternative damage theories in discovery, Plaintiff nevertheless obtained its primary litigation objective.

    Had Plaintiff had been awarded only a small percentage of the relief it requested, Defendants might have a stronger argument.  See, e.g., Berkla v. Corel Corp., 302 F.3d 909, 920 (9th Cir. 2002) (concluding that district court did not abuse its discretion in denying attorneys' fees to plaintiff as plaintiff "recovered only $23,502 in compensatory damages for breach of the NDA, although he sought more than $ 1.2 million" -- i.e., only 2% of amount originally sought; emphasizing that, "[i]n this case, [the plaintiff's] demands and objectives clearly involved a substantial financial payoff" but the jury "completely rejected [his] contractual damages theory, instead awarding damages consistent with the estimates offered by [defendant's] expert").  But here, Plaintiff was hardly awarded a minute percentage of the relief sought; the jury gave Plaintiff all the relief it sought on one of its damage theories which amounted to about 90% of what it originally sought.  While it is true that I rejected

Plaintiff's initial damages theory on summary judgment, and that Plaintiff altered its damages theory during discovery, the bottom line is that Plaintiff won.  The results of the litigation were not "so equivocal" that the court should conclude that there was no prevailing party, Hsu, 9 Cal. 4th at 874.  Tellingly, Defendants did not cite any case where a party recovered the amount it sought at trial, despite having articulated alternative damages theories during discovery, and yet was not deemed the prevailing party for purposes of a fee award.  Given the final resolution of Plaintiff's breach of contract claims in its favor, I find that Plaintiff is the "prevailing party" within the meaning of section 1717 and is therefore entitled to attorney's fees.

In computing attorney's fees pursuant to contract under California or federal law, courts follow the "lodestar" approach.  Signature Networks, Inc. v. Estefan, 2005 WL 151928 (N.D. Cal. 2005); PLCM Group v. Drexler, 22 Cal. 4th 1084, 1095 (2000).  The loadstar is calculated by multiplying time spent by a reasonable hourly rate.  Here, the vast majority of the time Plaintiff claims was spent by William W. Farrer.  Plaintiff claims a total of 1,569 hours at an hourly rate of $500, for a total of $790,545.00.[3]  Defendants do not challenge Mr. Farrer's hourly rate or the hourly rate of his legal assistant, but instead claim that the hours spent by Mr. Farrer are unreasonable and should be reduced because (1) the request for fees, in proportion to the amount of the judgment

---

[3] This fee award also includes $7,095 in legal assistant fees at an hourly rate of $50.00.

rendered, is unreasonable and disproportionate on its face; (2) the fee request includes hours for common claims that were ultimately dismissed; (3) the fee request includes hours for time spent litigating tort claims against Lenny Davis, who was ultimately dismissed from the lawsuit; and (4) the fee request includes time spent on a motion for summary judgment wherein the court determined that the amount sought by Plaintiff was an unenforceable penalty.

As for the hours claimed, while the time is substantial, it was Defendants who pursued an aggressive litigation strategy.[4] It is therefore not surprising that Plaintiff was forced to incur the fees for which it seeks reimbursement.[5] Moreover, absent a challenge to specific hours, I cannot fault Plaintiff for incurring fees related to the prosecution of its lawsuit given Defendants' litigation strategy. See, e.g., International Longshoremen's & Warehousemen's Union v. Los Angeles Export Terminal, Inc., 69 Cal. App. 4th 287, 304 (1999) (a defendant "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the

---

[4] While Defendants successfully defeated Plaintiff's motion for summary judgment by arguing, inter alia, that the $366,000 was an illegal penalty and Plaintiff was only entitled to any lost profits it could prove, the practical effect of this victory was to convert a fairly simple case involving a fixed fee into a more laborious one in which Plaintiff had to prove lost profits.

[5] For example, very early in the litigation Defendants filed a motion to stay pending transfer of the case as a tag-along action in the *Chinese Drywall* MDL. (Docket No. 4.) Plaintiff also asserts that Defendants never engaged in any meaningful settlement discussions until after a jury verdict had been rendered. (See, e.g., Supplemental Declaration of William W. Farrer at ¶¶ 5-10.)

plaintiff in response."). It is also noteworthy that Plaintiff has paid the fees that Mr. Farrer claims. (See Farrer Decl. at ¶¶ 42-63.) Nevertheless, some adjustments to the hours claimed by Plaintiff are warranted.[6]

I agree with Defendants that a reduction in the hours requested by Plaintiff for the work associated with the claims against Lenny Davis is justified. The tort claims asserted against Mr. Davis were voluntarily dismissed by Plaintiff based on lack of personal jurisdiction. (Docket No. 37.) I therefore reduce Plaintiff's claimed hours by 8.[7] Cf. Reynolds Metals Co. v. Alperson, 25 Cal. 3d 124, 129-130 (1979); see also PLCM Group, Inc. v. Drexler, 22 Cal.4th 1084, 1095–1096 (2000) (the amount of attorneys' fees is within the

---

[6] At the hearing, Defendants argued that Plaintiff should be awarded no fees for work done prior to March 2011 because Defendants were treated unfairly by the court during the first pretrial conference at which the court "pushed" Plaintiff to back off of one damages theory and pursue a lost profits theory instead. Inasmuch as this argument was raised for the first time during the hearing and is not mentioned in Defendants' opposition, I decline to consider it. White v. FedEx Corp., Case No. 04-99, 2006 U.S. Dist. LEXIS 9975, 2006 WL 618591, at *2 (N.D. Cal. Mar. 13, 2006) ("The Court will not consider any arguments or evidence raised for the first time at the hearing") (citing Civ. L.R. 7-3(a), (d)); Google Inc. v. Am. Blind & Wallpaper Factory, Inc., Case No. 03-5340, 2006 U.S. Dist. LEXIS 58970, at *6 n.3 (N.D. Cal. Aug. 10, 2006). That said, it was Defendants who introduced the lost profits theory into the case when they opposed Plaintiff's summary judgment motion in November 2010 by arguing successfully that the $366,000 fee was an illegal penalty and that all Plaintiff was entitled to was lost profits. See Freedman v. The Rector, 37 Cal. 2d 16 (1951).

[7] In its reply brief, Plaintiff agreed to reduce its hours for fees associated with the Lenny Davis claims by 8 hours. At the hearing, I asked whether Defendants had any reason to increase the number of hours that should be reduced for work pertaining to Lenny Davis and was given no suggestion from Defendants' counsel regarding what deduction beyond 8 hours would be appropriate.

8

sound discretion of the trial court).

I also agree with Defendants that a minor adjustment in Plaintiff's requested fee award should be made to omit hours billed for the common counts asserted by Plaintiff, which were ultimately summarily dismissed.[8]  Based on my recollection of this case and the course of the litigation, I do not believe that prosecution of these common counts added materially to Mr. Farrer's work, and neither party addressed this issue during oral argument.  Moreover, neither common count was ever the focus of the litigation and both were factually inter-related with the main claim for breach of contract.  Cf. Reynolds, 25 Cal. 3d at 129-130.  Nevertheless, I find that given the outcome of these claims, a reduction of 15 hours for time spent researching the common claims and defending them against summary adjudication is warranted.

I agree with Defendants that a reduction in hours is warranted with respect to Plaintiff's unsuccessful summary judgment motion.  Mr. Farrer billed approximately 184 hours pursuing Plaintiff's summary judgment motion.  (See Declaration of William W. Farrer ¶¶ 51-54.)  While Plaintiff did not summarily prevail on its damages theory, Plaintiff did obtain a number of favorable rulings by way of its motion, such as a finding that there was a valid and enforceable contract between the parties.  These rulings were helpful to Plaintiff, and helped streamline the trial.  Considering all these factors, I find that a reduction of 92 hours is

---

[8] These common counts included Plaintiff's fourth and fifth claims for relief for accounting.

1  warranted.  See Cabrales v. County of Los Angeles, 935 F.2d
2  1050, 1052 (9th Cir. 1991) ("If a plaintiff ultimately wins on
3  a particular claim, she is entitled to all attorney's fees
4  reasonably expended in pursuing that claim - even though she
5  may have suffered some adverse rulings.")

6      Finally, Defendants argue that Mr. Farrer's hours should
7  be reduced because Mr. Farrer engaged in block billing.
8  "Block billing" refers to "the time-keeping method by which
9  each lawyer and legal assistant enters the total daily time
10 spent working on a case, rather than itemizing the time
11 expended on specific tasks."  Mendez v. County of San
12 Bernardino, 540 F.3d 1109, 1129 n.2 (9th Cir. 2008) (quoting
13 Welch v. Met. Life Ins. Co., 480 F.3d 942, 948 (9th Cir.
14 2007)).  Generally, courts have discretion to reduce block-
15 billed hours because the nature of these time entries renders
16 it difficult to determine whether fees are unnecessarily
17 duplicative or unreasonable.  See Welch, 480 F.3d at 948.
18 This is so because it is "more difficult to determine how much
19 time was spent on particular activities."  Id.  Having
20 reviewed the time records, I do not find any entries that
21 appear excessive or objectionable.  Although Mr. Farrer does
22 occasionally engage in block billing, his time entries are
23 both specific and itemized in a fashion that permit a
24 meaningful review of the entries for purposes of determining
25 their reasonableness.  Moreover, any concerns regarding
26 duplication of effort or administrative overlap are mitigated
27 in this case by virtue of the fact that Mr. Farrer completed
28 nearly all of the legal work performed in this case on his

own, without the assistance of other attorneys.[10]  I therefore find that no additional reductions in Mr. Farrer's time are necessary.

**INTEREST**

Under California law, prejudgment interest is governed by Civil Code section 3287 and is recoverable in any action in which damages are certain or "capable of being made certain by calculation" and the right to recover such damages is vested in the plaintiff on a particular day.  Cal. Civ. Code § 3287(a); see also, Cortez v. Purolator Air Filtration Products Co., 23 Cal. 4th 163, 174-75 (2000).  The test for determining "certainty" under section 3287(a) is whether the defendant actually knows the amount owed or could have computed the amount from reasonably available information.[11]  Children's Hosp. & Med. Ctr. v. Bonta, 97 Cal. 4th 740, 774 (2002).  Under this section, prejudgment interest cannot be awarded when the amount of damages cannot be ascertained except on conflicting evidence.  Lineman v. Schmid, 32 Cal.2d 204, 212 (1948); Coughlin v. Blair, 41 Cal.2d 587, 604 (1953).  The rationale behind the rule is that where a defendant does not

---

[10] Mr. Farrer has also provided a very detailed monthly analysis of the work he performed in this case in his declaration, thereby further mitigating any concerns regarding his billing practices in this litigation.  Notably, under certain circumstances the Local Rules permit an attorney to submit a "summary" of the time spent in this litigation (see L.R. 54-5(b)(2)), and Mr. Farrer has provided significantly more detailed records to support Plaintiff's fee request.

[11] "[The] certainty requirement of section 3287, subdivision (a) has been reduced to two tests: (1) whether the debtor knows the amount owed or (2) whether the debtor would be able to compute the damages."  Chesapeake Industries, Inc. v. Togova Enterprises, Inc., 149 Cal. App.3d 901, 911 (1983).

know what amount he owes and cannot ascertain it except by accord or judicial process, he cannot be in default for not paying it. Conderback, Inc. v. Standard Oil Co., 239 Cal. App. 2d 664, 689-690 (1966) (citing Cox v. McLaughlin, 76 Cal. 60, 70 (1888)). Thus, where the amount of damages cannot be resolved except by verdict or judgment, section 3287(a) prejudgment interest is not appropriate. See, e.g., Wisper Corp. v. California Commerce Bank, 49 Cal. App. 4th 948, 960-61 (1996) (prejudgment interest not awardable on bank's liability for customer damages because portion of damages attributable to bank's negligence not subject to calculation until after trial and determination of relative fault).

A defendant's denial of liability does not make damages uncertain for purposes of Civil Code section 3287. See, e.g., Stein v. Southern Cal. Edison Co., 7 Cal. App. 4th 565, 572 (1992); Marine Terminals Corp. v. Paceco, Inc., 145 Cal. App. 3d at p. 995. "Damages are deemed certain or capable of being made certain within the provisions of subdivision (a) of [Civil Code] section 3287 where there is essentially no dispute between the parties concerning the basis of computation of damages if any are recoverable but where their dispute centers on the issue of liability giving rise to damage." Esgro Central, Inc. v. General Ins. Co., 20 Cal. App. 3d 1054, 1060 (1971); see also Fireman's Fund Ins. Co. v. Allstate Ins. Co., 234 Cal. App. 3d 1154, 1172-1173 (1991). Thus, it is clear that Civil Code section 3287 looks to the certainty of the damages suffered by the plaintiff, rather than to a defendant's ultimate liability, in determining

12

whether prejudgment interest is mandated.  If the defendant does not know or cannot readily compute the damages, the plaintiff must supply him with a statement and supporting data so that defendant can ascertain the damages.  <u>Levy-Zentner Co. v. Southern Pac. Transportation Co.</u>, 74 Cal. App. 3d 762, 798 (1977).[12]  In other words, "If the amount owing can be calculated and determined from statements rendered by the plaintiff to the defendant and those statements are found to be true and correct, it is a matter of mere calculation and prejudgment interest can be awarded."  <u>Conderback</u>, 239 Cal. App. 2d at 689 (citing <u>Anselmo v. Sebastiani</u>, 219 Cal. 292, 301 (1933)).

    Here, Plaintiff asserts that it is entitled to prejudgment interest in the amount of 18% pursuant to the contract.[13]  In support of its argument, Plaintiff relies principally on <u>Roodenburg v. Pavestone Co., L.P.</u>, 171 Cal. App. 4th 185, 191 (2008), for the proposition that where prejudgment interest is part of an amount owed under the terms of a contract, section 3287(a) and the "certainty" of damages requirement do not apply.  In <u>Roodenburg</u>, the court affirmed an award of interest on the value of plaintiff's capital

---

[12] In <u>Levy-Zentner Co.</u>, the court found that estimates of expert appraisers were required to render certain, damages for loss of market value of real property. <u>Id.</u> at p. 800.  The court allowed interest from the date on which plaintiff supplied defendants with these estimates. <u>Id.</u> at p. 801.

[13] Section 3.5 of the contract states as follows: "Late Fees.  Any payments that are late shall carry a late fee of eighteen percent (18%) per annum simple interest (1.5% per month), which shall become due and payable with such late payment."

13

account, as found by the jury, where the parties contract expressly obligated the defendant to pay interest on any part of the value of the capital account that was not paid within 30 days.  In Roodenburg, there was no dispute that some amount of prejudgment interest was owed on the unpaid value of the capital account under the express terms of the parties' agreement; here, nothing in the contract provided for interest in the event plaintiff recovered lost profits.  The provision of the contract relied upon by Plaintiff is in the "Consequences of Non-Payment" and "Late Fees" section.  Plaintiff drafted the contract.  Had it wanted a provision for prejudgment interest in the event of *any* dispute arising out of the contract, it could have easily drafted one.  Instead, the contract provides for interest only in the event of a late payment, and the dispute here was not over a late payment.  I therefore find Roodenburg inapplicable to the facts of this case, and apply the test articulated by California courts under 3287(a).

Under that test, the amount Plaintiff claimed under Plaintiff's theory of the case which the jury accepted, was not identified in any contractual document and could not be calculated until late in the litigation.  In part, this is because Plaintiff changed its damages theory as the litigation progressed.  In fact, Plaintiff presented the jury with two different damages calculations – one for $324,000 and one for $317,000.  Thus, I do not believe that under all the circumstances of this case, the applicable test (*i.e.*, whether the sum found to be due to plaintiff was known to defendant in

that it was certain or readily ascertainable) has been met. Howard v. American National Fire Ins. Co., 187 Cal. App. 4th 498, 535 (2010).  I therefore find that Plaintiff is not entitled to prejudgment interest under section 3287(a).  See Esgro Central, Inc. v. General Ins. Co., 20 Cal. App. 3d 1054, 1062 (1971) ("Subdivision (a) of section 3287 does not authorize prejudgment interest as a matter of law where the amount of damage, as opposed to only the determination of liability, depends upon a judicial determination based upon conflicting evidence and is not ascertainable from truthful data supplied by the claimant to his debtor.")

Plaintiff also contends that it should be awarded prejudgment interest pursuant to 3287(b).  Section 3287(b) provides that "Every person who is entitled under any judgment to receive damages based upon a cause of action in contract where the claim was unliquidated, may also recover interest thereon from a date prior to the entry of judgment as the court may, in its discretion, fix, but in no event earlier than the date the action was filed."  Cal. Code Civ. Proc. § 3287(b).  "The discretion conferred [under section 3287(b)] is limited by the purposes underlying interest awards ... ."  Gourley v. State Farm Mut. Auto. Ins. Co., 53 Cal. 3d 121, 133 (1991).[14]  Here, Plaintiff argues that the court should award

---

[14] Prejudgment interest is awarded to compensate a party for the loss of the use of his or her property. Nordahl v. Department of Real Estate, 48 Cal. App.3d at p. 665; Cassinos v. Union Oil Co., 14 Cal. App. 4th 1770, 1790 (1993) ("The policy underlying authorization of an award of prejudgment interest is to compensate the injured party—to make that party whole for the accrual of wealth which could have been produced during the period of loss.").  "It has long been settled that

15

the 18% interest rate from the date that the complaint was filed because Defendants agreed to pay interest at that rate on any amounts owed under the contract.  I disagree.  Defendants agreed to pay interest on late payments – not for any dispute arising out of the contract.  Moreover, the $366,000 originally sought in this case by Plaintiff was ruled to be an illegal penalty, and therefore unenforceable.  Given the circumstances of this case, I decline to award Plaintiff prejudgment interest under subsection (b) of 3287.

Finally, Plaintiff seeks postjudgment interest at the 18% contract rate.  While state law governs prejudgment interest on state-law claims in diversity cases, federal law governs postjudgment interest.  American Tel. & Tel. Co. v. United Computer Sys., Inc., 98 F.3d 1206, 1209 (9th Cir. 1996) (citing Northrop Corp. v Triad Int'l Marketing, S.A., 842 F.2d 1154, 1155 (9th Cir. 1988)).  Postjudgment interest is mandatory.  28 U.S.C. § 1961(a) ("Interest shall be allowed on any money judgment in a civil case recovered in a district court."); see also Air Separation v. Underwriters at Lloyd's of London, 45 F.3d 288, 290 (9th Cir. 1995).  Plaintiff recognizes that federal law governs postjudgment interest, but argues that parties can contractually agree to a different rate of interest.  In other words, Plaintiff contends that parties can "contract around [section] 1961" and that the parties did so in this case.  (Pl.'s Reply at p.4.)

---

[Civil Code] section 3287 should be broadly interpreted to provide just compensation to the injured party for loss of use of money during the prejudgment period." Gourley v. State Farm Mut. Auto. Ins. Co., 53 Cal.3d 121, 132 (1991).

16

Plaintiff is correct that an exception to section 1961 exists when the parties contractually agree to waive section 1961's application. Fid. Fed. Bank, FSB v. Durga Ma Corp., 387 F.3d 1021, 1023 (9th Cir. 2004) (citing Citicorp Real Estate, Inc. v. Smith, 155 F.3d 1097, 1107-08 (9th Cir. 1998) (promissory notes at issue included an express, mutually-agreed upon interest rate in the case of default)).[15] Here, however, as stated above, the contractual provision upon which Plaintiff relies is a provision for interest in the event of a late payment – not a provision that expressly states that the parties agreed to a specified prejudgment or postjudgment interest rate in the event of a dispute arising out of the contract, nor is it one that clearly expresses the parties' intent to "contract around" section 1961. Cf. FCS Advisors, Inc. v. Fair Fin. Co., 605 F.3d 144 (2d Cir. 2010). I therefore find that postjudgment interest shall be governed as per section 1961(a), calculated "from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a).

For the reasons stated above, **IT IS ORDERED** that

---

[15] "[M]ost courts that have addressed the question have held that parties may contract around § 1961 and agree to a different postjudgment interest rate." Jack Henry & Associates, Inc. v. BSC, Inc., 753 F.Supp.2d 665, 667-68 (E.D.Ky. 2010) (citing FCS Advisors, Inc. v. Fair Finance Co., 605 F.3d 144, 147-48 (2d Cir. 2010); In re Riebesell, 586 F.3d 782, 794 (10th Cir. 2009); Cent. States, SE & SW Areas Pension Fund v. Bomar Nat'l, Inc., 253 F.3d 1011, 1020 (7th Cir. 2001); In re Lift & Equip. Serv., Inc., 816 F.2d 1013, 1018 (5th Cir. 1987)).

Plaintiff is awarded $734,095 in fees as follows:

| ATTORNEY/ LEGAL ASSISTANT | HOURLY RATE | HOURS | FEE AWARD |
|---|---|---|---|
| William Farrer | $500 | 1,454 | $727,000.00 |
| Julie Lundgren | $50 | 141.9 | $7,095.00 |
| **Total Fees** | | | $734,095.00 |

It is further **ORDERED** that Plaintiff is entitled to postjudgment interest at the rate permitted by § 1961(a).

Dated: January 4, 2012

_____
Bernard Zimmerman
United States Magistrate Judge

G:\BZALL\-BZCASES\CATAPHORA V. PARKER\POST TRIAL MOTIONS\ORDER ON PS MOT FOR ATTORNEYS FEES.BZ VERSION.wpd