1

2

3

4

5

6

7

8                     UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10

11   CATAPHORA INC.,              )
                                  )
12            Plaintiff(s),       )      No. C09-5749 BZ
                                  )
13       v.                       )      **CORRECTED ORDER AWARDING**
                                  )      **ATTORNEY'S FEES AND INTEREST**
14   JERROLD SETH PARKER, et al.,)
                                  )
15            Defendant(s).       )
     _____)

16

17        Plaintiff has moved for attorney's fees and costs, as the

18   "prevailing party" under California Civil Code section 1717,

19   and for prejudgment and postjudgment interest.[1]

20                          **ATTORNEY'S FEES**

21        "In an action involving state law claims, [federal

22   courts] apply the law of the forum state to determine whether

23   a party is entitled to attorneys' fees, unless it conflicts

24   with a valid federal statute or procedural rule."  MRO

25   Commc'ns v. Am. Tel. & Tel. Co., 197 F.3d 1276, 1282 (9th Cir.

26   _____

27        [1]   A ruling on Plaintiff's motion for costs is deferred
     until after the Clerk has taxed costs and objections, if any,
28   are filed.

                                   1

1999).  Here, the parties signed a contract which provides, in

relevant part, that the "prevailing party ... shall be

entitled ... to reimbursement for its costs and expense [sic]

(including court costs and reasonable fees for attorneys and

expert witnesses) incurred with respect to the bringing and

maintaining" of any legal action brought by one party against

the other and arising out of the contract.  (See Declaration

of William W. Farrer at ¶ 7.)  Under California law, "where

the parties have contractually obligated themselves to pay

attorneys' fees," California Civil Code section 1717 governs.

Farmers Ins. Exchange v. Law Offices of Conrado Joe Sayas,

Jr., 250 F.3d 1234, 1237 (9th Cir. 2001).  Section 1717

provides in relevant part:

> (a) In any action on a contract, where the contract
> specifically provides that attorney's fees and costs,
> which are incurred to enforce that contract ... then the
> party who is determined to be the party prevailing on the
> contract, whether he or she is the party specified in the
> contract or not, shall be entitled to reasonable
> attorney's fees in addition to other costs ...

> (b)(1) The court, upon notice and motion by a party,
> shall determine who is the party prevailing on the
> contract for purposes of this section, whether or not the
> suit proceeds to final judgment. Except as provided in
> paragraph (2), the party prevailing on the contract shall
> be the party who recovered a greater relief in the action
> on the contract.

The California Supreme Court has explained that in

deciding whether there is a "party prevailing on the

contract," the trial court is "to compare the relief awarded

on the contract claim or claims with the parties' demands on

those same claims and their litigation objectives as disclosed

by the pleadings, trial briefs, opening statements, and

similar sources."  Hsu v. Abbara, 9 Cal. 4th 863, 876 (1995).

1   "The prevailing party determination is to be made only upon

2   final resolution of the contract claims and only by a

3   'comparison of the extent to which each party has succeeded

4   and failed to succeed in its contentions.'" <u>Id.</u> (citation

5   omitted).

6        Here, Defendants argue that Plaintiff is not the

7   "prevailing party" because Plaintiff did not recover the full

8   amount it sought under the contract.  Defendants' argument is

9   unpersuasive.  Unlike other cases where courts have refused to

10  award attorney's fees under section 1717, this case was

11  decided on the merits of Plaintiff's contract claims, and

12  produced a "final resolution" of these claims in Plaintiff's

13  favor.  <u>Hsu</u>, 9 Cal. 4th at 876; <u>Cf.</u> <u>Laurel Village Bakery, LLC</u>

14  <u>v. Global Payments Direct, Inc.</u>, Case No. 06-1332, 2007 U.S.

15  Dist. LEXIS 95238, at *10 (N.D. Cal. Dec. 14, 2007) (no fees

16  awarded where case dismissed for improper venue because

17  "[d]efendants do not constitute a 'prevailing party' entitled

18  to fees because no decision has been reached on the merits of

19  Plaintiff's contract claims."); <u>N.R. v. San Ramon Valley</u>

20  <u>Unified Sch. Dist.</u>, Case No. 05-0441, 2006 U.S. Dist. LEXIS

21  47287, 2006 WL 1867682, at *7 (N.D. Cal. Jul. 6, 2006)

22  (concluding that defendant was not a prevailing party because

23  the court "dismissed plaintiffs' breach of contract claim for

24  lack of jurisdiction, and made no determination whatsoever as

25  to the merits of that claim"); <u>Idea Place Corp. v. Fried</u>, 390

26  F. Supp. 2d 903 (N.D. Cal. 2005) (no award of attorneys' fees

27  where court dismissed breach of contract action for lack of

28  subject matter jurisdiction); <u>Advance Fin. Res., Inc. v.</u>

3

1   <u>Cottage Health Sys., Inc.</u>, Case No. 08-1084, 2009 U.S. Dist.

2   LEXIS 79647, 2009 WL 2871139, at *2 (D. Or. Sep. 1, 2009)

3   (holding that defendant was not a prevailing party under

4   section 1717 because the "contract claim was dismissed on

5   jurisdictional grounds and there [had] been no final

6   resolution of the underlying contract claim"); <u>Estate of</u>

7   <u>Drummond</u>, 149 Cal. App. 4th 46, 51 (2007) (denying attorney's

8   fees because "appellants obtained only an interim victory,

9   based on [the attorney] having attempted to pursue his claims

10  in the wrong forum"); <u>Garzon v. Varese</u>, Case No. 09-9010, 2011

11  U.S. Dist. LEXIS 4250, 2011 WL 103948, at *3 (C.D. Cal. Jan.

12  11, 2011) (stating that because "Defendant secured a dismissal

13  on technical grounds, rather than a judgment on the merits of

14  the contract claim, he is not the prevailing party withing the

15  meaning of section 1717 and is, therefore, not entitled to

16  attorney's fees").[2]

17      Defendants also assert that Plaintiff is not the

18  "prevailing party" because Plaintiff had advanced several of

19  damages theories, including a "lost business opportunity"

20  theory, under which Plaintiff sought nearly two million

21  dollars in damages, which it never collected.  This argument

22  is also unpersuasive.  Plaintiff's sued to recover $366,000 on

23

24      [2]   Defendants' reliance on <u>Horning v. Shilberg</u>, 130 Cal.
    App. 4th 197 (2005), is misplaced.  In <u>Horning</u>, the trial court
25  found that while defendant had breached the contract, plaintiff
    had suffered no legally recoverable damages.  The trial court
26  then found that defendant was the prevailing party and awarded
    him attorney fees.  After affirming the trial court's rulings
27  on the merits, the Court of Appeal simply held the trial court
    had not abused its discretion in awarding fees.  Here, the jury
28  not only found Defendants liable for breaching the contract,
    but also awarded Plaintiff damages according to proof.

the grounds that Defendants had breached the contract.  While Plaintiff only recovered $317,000, the fact that Plaintiff recovered less than the total it sued for does not automatically make it a nonprevailing party.  See, e.g., In re Sparkman, 703 F.2d 1097, 1100 (9th Cir. Cal. 1983) (rejecting the position that a party who recovers less than the total relief requested is not a "prevailing party"); see also Sukut-Coulson, Inc. v. Allied Canon Co., 85 Cal. App. 3d 648, 656 (1978).  While Plaintiff may have asserted alternative damage theories in discovery, Plaintiff nevertheless obtained its primary litigation objective.

Had Plaintiff had been awarded only a small percentage of the relief it requested, Defendants might have a stronger argument.  See, e.g., Berkla v. Corel Corp., 302 F.3d 909, 920 (9th Cir. 2002) (concluding that district court did not abuse its discretion in denying attorneys' fees to plaintiff as plaintiff "recovered only $23,502 in compensatory damages for breach of the NDA, although he sought more than $ 1.2 million" -- i.e., only 2% of amount originally sought; emphasizing that, "[i]n this case, [the plaintiff's] demands and objectives clearly involved a substantial financial payoff" but the jury "completely rejected [his] contractual damages theory, instead awarding damages consistent with the estimates offered by [defendant's] expert").  But here, Plaintiff was hardly awarded a minute percentage of the relief sought; the jury gave Plaintiff all the relief it sought on one of its damage theories which amounted to about 90% of what it originally sought.  While it is true that I rejected

Plaintiff's initial damages theory on summary judgment, and that Plaintiff altered its damages theory during discovery, the bottom line is that Plaintiff won.  The results of the litigation were not "so equivocal" that the court should conclude that there was no prevailing party, Hsu, 9 Cal. 4th at 874.  Tellingly, Defendants did not cite any case where a party recovered the amount it sought at trial, despite having articulated alternative damages theories during discovery, and yet was not deemed the prevailing party for purposes of a fee award.  Given the final resolution of Plaintiff's breach of contract claims in its favor, I find that Plaintiff is the "prevailing party" within the meaning of section 1717 and is therefore entitled to attorney's fees.

In computing attorney's fees pursuant to contract under California or federal law, courts follow the "lodestar" approach.  Signature Networks, Inc. v. Estefan, 2005 WL 151928 (N.D. Cal. 2005); PLCM Group v. Drexler, 22 Cal. 4th 1084, 1095 (2000).  The loadstar is calculated by multiplying time spent by a reasonable hourly rate.  Here, the vast majority of the time Plaintiff claims was spent by William W. Farrer.  Plaintiff claims a total of 1,569 hours at an hourly rate of $500, for a total of $790,545.00.[3]  Defendants do not challenge Mr. Farrer's hourly rate or the hourly rate of his legal assistant, but instead claim that the hours spent by Mr. Farrer are unreasonable and should be reduced because (1) the request for fees, in proportion to the amount of the judgment

---

[3]     This fee award also includes $7,095 in legal assistant fees at an hourly rate of $50.00.

1  rendered, is unreasonable and disproportionate on its face;

2  (2) the fee request includes hours for common claims that were

3  ultimately dismissed; (3) the fee request includes hours for

4  time spent litigating tort claims against Lenny Davis, who was

5  ultimately dismissed from the lawsuit; and (4) the fee request

6  includes time spent on a motion for summary judgment wherein

7  the court determined that the amount sought by Plaintiff was

8  an unenforceable penalty.

9      As for the hours claimed, while the time is substantial,

10  it was Defendants who pursued an aggressive litigation

11  strategy.[4]  It is therefore not surprising that Plaintiff was

12  forced to incur the fees for which it seeks reimbursement.[5]

13  Moreover, absent a challenge to specific hours, I cannot fault

14  Plaintiff for incurring fees related to the prosecution of its

15  lawsuit given Defendants' litigation strategy.  See, e.g.,

16  International Longshoremen's & Warehousemen's Union v. Los

17  Angeles Export Terminal, Inc., 69 Cal. App. 4th 287, 304

18  (1999) (a defendant "cannot litigate tenaciously and then be

19  heard to complain about the time necessarily spent by the

20  _____

21      [4]   While Defendants successfully defeated Plaintiff's
    motion for summary judgment by arguing, inter alia, that the
22  $366,000 was an illegal penalty and Plaintiff was only entitled
    to any lost profits it could prove, the practical effect of
23  this victory was to convert a fairly simple case involving a
    fixed fee into a more laborious one in which Plaintiff had to
24  prove lost profits.

25      [5]   For example, very early in the litigation Defendants
    filed a motion to stay pending transfer of the case as a tag-
26  along action in the Chinese Drywall MDL.  (Docket No. 4.)
    Plaintiff also asserts that Defendants never engaged in any
27  meaningful settlement discussions until after a jury verdict
    had been rendered.  (See, e.g., Supplemental Declaration of
28  William W. Farrer at ¶¶ 5-10.)

7

1  plaintiff in response."). It is also noteworthy that

2  Plaintiff has paid the fees that Mr. Farrer claims. (<u>See</u>

3  Farrer Decl. at ¶¶ 42-63.) Nevertheless, some adjustments to

4  the hours claimed by Plaintiff are warranted.[6]

5     I agree with Defendants that a reduction in the hours

6  requested by Plaintiff for the work associated with the claims

7  against Lenny Davis is justified. The tort claims asserted

8  against Mr. Davis were voluntarily dismissed by Plaintiff

9  based on lack of personal jurisdiction. (Docket No. 37.) I

10 therefore reduce Plaintiff's claimed hours by 8.[7] <u>Cf.</u>

11 <u>Reynolds Metals Co. v. Alperson</u>, 25 Cal. 3d 124, 129-130

12 (1979); <u>see also</u> <u>PLCM Group, Inc. v. Drexler</u>, 22 Cal.4th 1084,

13 1095-1096 (2000) (the amount of attorneys' fees is within the

14 _____

15     [6]    At the hearing, Defendants argued that Plaintiff
   should be awarded no fees for work done prior to March 2011
16 because Defendants were treated unfairly by the court during
   the first pretrial conference at which the court "pushed"
17 Plaintiff to back off of one damages theory and pursue a lost
   profits theory instead. Inasmuch as this argument was raised
18 for the first time during the hearing and is not mentioned in
   Defendants' opposition, I decline to consider it. <u>White v.</u>
19 <u>FedEx Corp.</u>, Case No. 04-99, 2006 U.S. Dist. LEXIS 9975, 2006
   WL 618591, at *2 (N.D. Cal. Mar. 13, 2006) ("The Court will not
20 consider any arguments or evidence raised for the first time at
   the hearing") (citing Civ. L.R. 7-3(a), (d)); <u>Google Inc. v.</u>
21 <u>Am. Blind & Wallpaper Factory, Inc.</u>, Case No. 03-5340, 2006
   U.S. Dist. LEXIS 58970, at *6 n.3 (N.D. Cal. Aug. 10, 2006).
22 That said, it was Defendants who introduced the lost profits
   theory into the case when they opposed Plaintiff's summary
23 judgment motion in November 2010 by arguing successfully that
   the $366,000 fee was an illegal penalty and that all Plaintiff
24 was entitled to was lost profits. <u>See</u> <u>Freedman v. The Rector</u>,
   37 Cal. 2d 16 (1951).

25     [7]    In its reply brief, Plaintiff agreed to reduce its
   hours for fees associated with the Lenny Davis claims by 8
26 hours. At the hearing, I asked whether Defendants had any
   reason to increase the number of hours that should be reduced
27 for work pertaining to Lenny Davis and was given no suggestion
   from Defendants' counsel regarding what deduction beyond 8
28 hours would be appropriate.

1  sound discretion of the trial court).

2  I also agree with Defendants that a minor adjustment in

3  Plaintiff's requested fee award should be made to omit hours

4  billed for the common counts asserted by Plaintiff, which were

5  ultimately summarily dismissed.[8]  Based on my recollection of

6  this case and the course of the litigation, I do not believe

7  that prosecution of these common counts added materially to

8  Mr. Farrer's work, and neither party addressed this issue

9  during oral argument.  Moreover, neither common count was ever

10 the focus of the litigation and both were factually inter-

11 related with the main claim for breach of contract.  Cf.

12 Reynolds, 25 Cal. 3d at 129-130.  Nevertheless, I find that

13 given the outcome of these claims, a reduction of 15 hours for

14 time spent researching the common claims and defending them

15 against summary adjudication is warranted.

16 I agree with Defendants that a reduction in hours is

17 warranted with respect to Plaintiff's unsuccessful summary

18 judgment motion.  Mr. Farrer billed approximately 184 hours

19 pursuing Plaintiff's summary judgment motion.  (See

20 Declaration of William W. Farrer ¶¶ 51-54.)  While Plaintiff

21 did not summarily prevail on its damages theory, Plaintiff did

22 obtain a number of favorable rulings by way of its motion,

23 such as a finding that there was a valid and enforceable

24 contract between the parties.  These rulings were helpful to

25 Plaintiff, and helped streamline the trial.  Considering all

26

27        [8]    These common counts included Plaintiff's fourth and
   fifth claims for relief for account stated and open book
28 account.

9

1    these factors, I find that a reduction of 92 hours is

2    warranted.  See Cabrales v. County of Los Angeles, 935 F.2d

3    1050, 1052 (9th Cir. 1991) ("If a plaintiff ultimately wins on

4    a particular claim, she is entitled to all attorney's fees

5    reasonably expended in pursuing that claim - even though she

6    may have suffered some adverse rulings.")

7         Finally, Defendants argue that Mr. Farrer's hours should

8    be reduced because Mr. Farrer engaged in block billing.

9    "Block billing" refers to "the time-keeping method by which

10   each lawyer and legal assistant enters the total daily time

11   spent working on a case, rather than itemizing the time

12   expended on specific tasks."  Mendez v. County of San

13   Bernardino, 540 F.3d 1109, 1129 n.2 (9th Cir. 2008) (quoting

14   Welch v. Met. Life Ins. Co., 480 F.3d 942, 948 (9th Cir.

15   2007)).  Generally, courts have discretion to reduce block-

16   billed hours because the nature of these time entries renders

17   it difficult to determine whether fees are unnecessarily

18   duplicative or unreasonable.  See Welch, 480 F.3d at 948.

19   This is so because it is "more difficult to determine how much

20   time was spent on particular activities."  Id.  Having

21   reviewed the time records, I do not find any entries that

22   appear excessive or objectionable.  Although Mr. Farrer does

23   occasionally engage in block billing, his time entries are

24   both specific and itemized in a fashion that permit a

25   meaningful review of the entries for purposes of determining

26   their reasonableness.  Moreover, any concerns regarding

27   duplication of effort or administrative overlap are mitigated

28   in this case by virtue of the fact that Mr. Farrer completed

1    nearly all of the legal work performed in this case on his

2    own, without the assistance of other attorneys.[10]  I therefore

3    find that no additional reductions in Mr. Farrer's time are

4    necessary.

5                              **INTEREST**

6         Under California law, prejudgment interest is governed by

7    Civil Code section 3287 and is recoverable in any action in

8    which damages are certain or "capable of being made certain by

9    calculation" and the right to recover such damages is vested

10   in the plaintiff on a particular day.  Cal. Civ. Code §

11   3287(a); see also, Cortez v. Purolator Air Filtration Products

12   Co., 23 Cal. 4th 163, 174-75 (2000).  The test for determining

13   "certainty" under section 3287(a) is whether the defendant

14   actually knows the amount owed or could have computed the

15   amount from reasonably available information.[11]  Children's

16   Hosp. & Med. Ctr. v. Bonta, 97 Cal. 4th 740, 774 (2002).

17   Under this section, prejudgment interest cannot be awarded

18   when the amount of damages cannot be ascertained except on

19   conflicting evidence.  Lineman v. Schmid, 32 Cal.2d 204, 212

20   (1948); Coughlin v. Blair, 41 Cal.2d 587, 604 (1953).  The

---

21   [10]   Mr. Farrer has also provided a very detailed monthly
22   analysis of the work he performed in this case in his
     declaration, thereby further mitigating any concerns regarding
23   his billing practices in this litigation.  Notably, under
     certain circumstances the Local Rules permit an attorney to
24   submit a "summary" of the time spent in this litigation (see
     L.R. 54-5(b)(2)), and Mr. Farrer has provided significantly
25   more detailed records to support Plaintiff's fee request.

26   [11]   "[The] certainty requirement of section 3287,
     subdivision (a) has been reduced to two tests: (1) whether the
27   debtor knows the amount owed or (2) whether the debtor would be
     able to compute the damages."  Chesapeake Industries, Inc. v.
28   Togova Enterprises, Inc., 149 Cal. App.3d 901, 911 (1983).

rationale behind the rule is that where a defendant does not
know what amount he owes and cannot ascertain it except by
accord or judicial process, he cannot be in default for not
paying it.  Conderback, Inc. v. Standard Oil Co., 239 Cal.
App. 2d 664, 689-690 (1966) (citing Cox v. McLaughlin, 76 Cal.
60, 70 (1888)).  Thus, where the amount of damages cannot be
resolved except by verdict or judgment, section 3287(a)
prejudgment interest is not appropriate.  See, e.g., Wisper
Corp. v. California Commerce Bank, 49 Cal. App. 4th 948, 960-
61 (1996) (prejudgment interest not awardable on bank's
liability for customer damages because portion of damages
attributable to bank's negligence not subject to calculation
until after trial and determination of relative fault).

A defendant's denial of liability does not make damages
uncertain for purposes of Civil Code section 3287.  See, e.g.,
Stein v. Southern Cal. Edison Co., 7 Cal. App. 4th 565, 572
(1992); Marine Terminals Corp. v. Paceco, Inc., 145 Cal. App.
3d at p. 995.  "Damages are deemed certain or capable of being
made certain within the provisions of subdivision (a) of
[Civil Code] section 3287 where there is essentially no
dispute between the parties concerning the basis of
computation of damages if any are recoverable but where their
dispute centers on the issue of liability giving rise to
damage."  Esgro Central, Inc. v. General Ins. Co., 20 Cal.
App. 3d 1054, 1060 (1971); see also Fireman's Fund Ins. Co. v.
Allstate Ins. Co., 234 Cal. App. 3d 1154, 1172-1173 (1991).
Thus, it is clear that Civil Code section 3287 looks to the
certainty of the damages suffered by the plaintiff, rather

than to a defendant's ultimate liability, in determining
whether prejudgment interest is mandated.  If the defendant
does not know or cannot readily compute the damages, the
plaintiff must supply him with a statement and supporting data
so that defendant can ascertain the damages.  <u>Levy-Zentner Co.
v. Southern Pac. Transportation Co.</u>, 74 Cal. App. 3d 762, 798
(1977).[12]  In other words, "If the amount owing can be
calculated and determined from statements rendered by the
plaintiff to the defendant and those statements are found to
be true and correct, it is a matter of mere calculation and
prejudgment interest can be awarded."  <u>Conderback</u>, 239 Cal.
App. 2d at 689 (citing <u>Anselmo v. Sebastiani</u>, 219 Cal. 292,
301 (1933)).

Here, Plaintiff asserts that it is entitled to
prejudgment interest in the amount of 18% pursuant to the
contract.[13]  In support of its argument, Plaintiff relies
principally on <u>Roodenburg v. Pavestone Co., L.P.</u>, 171 Cal.
App. 4th 185, 191 (2008), for the proposition that where
prejudgment interest is part of an amount owed under the terms
of a contract, section 3287(a) and the "certainty" of damages
requirement do not apply.  In <u>Roodenburg</u>, the court affirmed

---

[12]   In <u>Levy-Zentner Co.</u>, the court found that estimates
of expert appraisers were required to render certain, damages
for loss of market value of real property.  <u>Id.</u> at p. 800.  The
court allowed interest from the date on which plaintiff
supplied defendants with these estimates.  <u>Id.</u> at p. 801.

[13]   Section 3.5 of the contract states as follows: "Late
Fees.  Any payments that are late shall carry a late fee of
eighteen percent (18%) per annum simple interest (1.5% per
month), which shall become due and payable with such late
payment."

an award of interest on the value of plaintiff's capital
account, as found by the jury, where the parties contract
expressly obligated the defendant to pay interest on any part
of the value of the capital account that was not paid within
30 days.  In Roodenburg, there was no dispute that some amount
of prejudgment interest was owed on the unpaid value of the
capital account under the express terms of the parties'
agreement; here, nothing in the contract provided for interest
in the event plaintiff recovered lost profits.  The provision
of the contract relied upon by Plaintiff is in the
"Consequences of Non-Payment" and "Late Fees" section.
Plaintiff drafted the contract.  Had it wanted a provision for
prejudgment interest in the event of *any* dispute arising out
of the contract, it could have easily drafted one.  Instead,
the contract provides for interest only in the event of a late
payment, and the dispute here was not over a late payment.  I
therefore find Roodenburg inapplicable to the facts of this
case, and apply the test articulated by California courts
under 3287(a).

Under that test, the amount Plaintiff claimed under
Plaintiff's theory of the case which the jury accepted, was
not identified in any contractual document and could not be
calculated until late in the litigation.  In part, this is
because Plaintiff changed its damages theory as the litigation
progressed.  In fact, Plaintiff presented the jury with two
different damages calculations – one for $324,000 and one for
$317,000.  Thus, I do not believe that under all the
circumstances of this case, the applicable test (*i.e.*, whether

14

the sum found to be due to plaintiff was known to defendant in

that it was certain or readily ascertainable) has been met.

Howard v. American National Fire Ins. Co., 187 Cal. App. 4th

498, 535 (2010).  I therefore find that Plaintiff is not

entitled to prejudgment interest under section 3287(a).  See

Esgro Central, Inc. v. General Ins. Co., 20 Cal. App. 3d 1054,

1062 (1971) ("Subdivision (a) of section 3287 does not

authorize prejudgment interest as a matter of law where the

amount of damage, as opposed to only the determination of

liability, depends upon a judicial determination based upon

conflicting evidence and is not ascertainable from truthful

data supplied by the claimant to his debtor.")

    Plaintiff also contends that it should be awarded

prejudgment interest pursuant to 3287(b).  Section 3287(b)

provides that "Every person who is entitled under any judgment

to receive damages based upon a cause of action in contract

where the claim was unliquidated, may also recover interest

thereon from a date prior to the entry of judgment as the

court may, in its discretion, fix, but in no event earlier

than the date the action was filed."  Cal. Code Civ. Proc. §

3287(b).  "The discretion conferred [under section 3287(b)] is

limited by the purposes underlying interest awards ... ."

Gourley v. State Farm Mut. Auto. Ins. Co., 53 Cal. 3d 121, 133

(1991).[14]  Here, Plaintiff argues that the court should award

---

[14]    Prejudgment interest is awarded to compensate a party
for the loss of the use of his or her property.  Nordahl v.
Department of Real Estate, 48 Cal. App.3d at p. 665;  Cassinos
v. Union Oil Co., 14 Cal. App. 4th 1770, 1790 (1993) ("The
policy underlying authorization of an award of prejudgment
interest is to compensate the injured party—to make that party

1    the 18% interest rate from the date that the complaint was

2    filed because Defendants agreed to pay interest at that rate

3    on any amounts owed under the contract.   I disagree.

4    Defendants agreed to pay interest on late payments – not for

5    any dispute arising out of the contract.   Moreover, the

6    $366,000 originally sought in this case by Plaintiff was ruled

7    to be an illegal penalty, and therefore unenforceable.   Given

8    the circumstances of this case, I decline to award Plaintiff

9    prejudgment interest under subsection (b) of 3287.

10          Finally, Plaintiff seeks postjudgment interest at the 18%

11   contract rate.   While state law governs prejudgment interest

12   on state-law claims in diversity cases, federal law governs

13   postjudgment interest.   American Tel. & Tel. Co. v. United

14   Computer Sys., Inc., 98 F.3d 1206, 1209 (9th Cir. 1996)

15   (citing   Northrop Corp. v Triad Int'l Marketing, S.A., 842

16   F.2d 1154, 1155 (9th Cir. 1988)).   Postjudgment interest is

17   mandatory.   28 U.S.C. § 1961(a) ("Interest shall be allowed on

18   any money judgment in a civil case recovered in a district

19   court."); see also Air Separation v. Underwriters at Lloyd's

20   of London, 45 F.3d 288, 290 (9th Cir. 1995).   Plaintiff

21   recognizes that federal law governs postjudgment interest, but

22   argues that parties can contractually agree to a different

23   rate of interest.   In other words, Plaintiff contends that

24   parties can "contract around [section] 1961" and that the

25   ───────────────

26   whole for the accrual of wealth which could have been produced
     during the period of loss.").   "It has long been settled that
27   [Civil Code] section 3287 should be broadly interpreted to
     provide just compensation to the injured party for loss of use
28   of money during the prejudgment period." Gourley v. State Farm
     Mut. Auto. Ins. Co., 53 Cal.3d 121, 132 (1991).

1  parties did so in this case.  (Pl.'s Reply at p.4.)

2      Plaintiff is correct that an exception to section 1961

3  exists when the parties contractually agree to waive section

4  1961's application.  <u>Fid. Fed. Bank, FSB v. Durga Ma Corp.</u>,

5  387 F.3d 1021, 1023 (9th Cir. 2004) (citing <u>Citicorp Real</u>

6  <u>Estate, Inc. v. Smith</u>, 155 F.3d 1097, 1107-08 (9th Cir. 1998)

7  (promissory notes at issue included an express,

8  mutually-agreed upon interest rate in the case of default)).[15]

9  Here, however, as stated above, the contractual provision upon

10  which Plaintiff relies is a provision for interest in the

11  event of a late payment – not a provision that expressly

12  states that the parties agreed to a specified prejudgment or

13  postjudgment interest rate in the event of a dispute arising

14  out of the contract, nor is it one that clearly expresses the

15  parties' intent to "contract around" section 1961.  <u>Cf.</u> <u>FCS</u>

16  <u>Advisors, Inc. v. Fair Fin. Co.</u>, 605 F.3d 144 (2d Cir. 2010).

17  I therefore find that postjudgment interest shall be governed

18  as per section 1961(a), calculated "from the date of the entry

19  of the judgment, at a rate equal to the weekly average 1-year

20  constant maturity Treasury yield, as published by the Board of

21  Governors of the Federal Reserve System, for the calendar week

22  preceding the date of the judgment."  28 U.S.C. § 1961(a).

23  ─────────────────

24  [15]    "[M]ost courts that have addressed the question have
held that parties may contract around § 1961 and agree to a
different postjudgment interest rate."  <u>Jack Henry &</u>

25  <u>Associates, Inc. v. BSC, Inc.</u>, 753 F.Supp.2d 665, 667-68
(E.D.Ky. 2010) (citing <u>FCS Advisors, Inc. v. Fair Finance Co.</u>,

26  605 F.3d 144, 147-48 (2d Cir. 2010); <u>In re Riebesell</u>, 586 F.3d
782, 794 (10th Cir. 2009); <u>Cent. States, SE & SW Areas Pension</u>

27  <u>Fund v. Bomar Nat'l, Inc.</u>, 253 F.3d 1011, 1020 (7th Cir. 2001);
<u>In re Lift & Equip. Serv., Inc.</u>, 816 F.2d 1013, 1018 (5th Cir.

28  1987)).

1    For the reasons stated above, **IT IS ORDERED** that

2  Plaintiff is awarded $734,095 in fees as follows:

| ATTORNEY/ LEGAL ASSISTANT | HOURLY RATE | HOURS | FEE AWARD |
|---|---|---|---|
| William Farrer | $500 | 1,454 | $727,000.00 |
| Laurel Knapp | $50 | 141.9 | $7,095.00 |
| **Total Fees** | | | $734,095.00 |

8  It is further **ORDERED** that Plaintiff is entitled to

9  postjudgment interest at the rate permitted by § 1961(a).

10  Dated: January 24, 2012

12  _____

13               Bernard Zimmerman
          United States Magistrate Judge

15  G:\BZALL\-BZCASES\CATAPHORA V. PARKER\POST TRIAL MOTIONS\AMENDED ORDER ON PS
    MOT FOR ATTORNEYS FEES.BZ VERSION.wpd